Good morning, Your Honors. My name is Karen Bucher, and I represent the appellant Nancy Jacobs. This is the case where the appellant was convicted of making false statements during real estate transactions. And Ms. Jacobs argues on appeal that her sentence is unreasonable because the district court misapplied the sentencing guidelines when the district court enhanced her sentence for role in offense, for abuse of a position of trust, and for use of sophisticated means. When the district court enhanced her sentence for role in the offense, I believe the district court misinterpreted Ninth Circuit law. The district court found that the enhancement applies even when there is no other criminally responsible participant. And Ninth Circuit authority is clear. In order for the role in offense enhancement to apply under 3b.1.1, at least the district court has to be clear. And I'm going to ask you to keep your voice up a little bit. It's kind of slow down. You've got a lot of time. Slow down, yeah. You know, you've got 19 minutes to go. Okay, I'll slow down. Slow down, yeah. The law in the Ninth Circuit states that in order for the role in enhancement to apply, that there has to be one other criminally responsible person for the enhancement of the role in the offense. U.S.A. representation states that the role in offense can only apply when the offense is committed by more than one criminally responsible person. And the application note to the role in offense guideline also states that in order for that offense, that role. The district court did not name five participants. That's what you're arguing? No, not at all. And so are you into the otherwise extensive category? And you're saying there has to be at least one other participant besides the defendant. Is that right? Exactly. That's what you're arguing. And you're saying the district court did not make that finding? No, the district court made a finding that there were no other criminally responsible people in this scheme. The district court did that or the government made that concession? I thought the district court was impressed, if that's the right word, by the secretary, I forget her name, who kept the double files, and also by the handyman who agreed to be the nominee and signing documentation. That was Ms. Howard. Okay, Ms. Howard, and then what was the handyman's name? Mr. Milford. Right. So why can't we look at the record and conclude that there's at least one other, if you take either one of those two people who were obviously assisting based on their own testimony by virtue of what they admitted that they did? Whether or not they are criminally prosecuted for it or not is kind of beside the point, isn't it? I believe that this Court is precluded from making that finding because the district court said that the government is conceding that there were no other criminally responsible people because they didn't have the mens rea to commit the offense. I mean, those words are in the record. But the question is whether or not the defendant's activities were otherwise extensive, right? And why can't the district court look at the fact that double sets of files were maintained and that the handyman, Mr. Milford, signed all these documents even though he obviously wasn't purchasing or selling any of the pieces of real estate and conclude just from those facts alone and the size of this fraud that it was an otherwise extensive scheme? But she didn't, Your Honor. She found those facts. The district court found those facts. But she didn't find that those people as individuals were criminally responsible. And that's a dispensation. But our case law doesn't require her to make specific findings in support of each enhancement, does it? The question is simply whether or not the record supports the determination by the district judge that this did involve more than Ms. Jacobs. Well, the application note, too, states that in order for the enhancement to apply, the defendant had to be leader of one or more other participants. Participants is defined as a person who is criminally responsible. And by my reading of the record, the district judge had to be leader of one or more participants.  And I think the question is, if we're discussing the first prong with the second, if we're talking about otherwise extensive, isn't that a different ---- I mean, let me ask the question a different way, Ms. Bucher. In light of now that we're in this world of post-Booker, do issues like this really make as much difference? If we were to vacate and remand this matter for resentencing by, as a Judge Phillips, why couldn't Judge Phillips look at this record and simply say, without regard to whether or not an enhancement for a role in the offense is appropriate, based on the nature and extent of this fraudulent scheme, I still think that the sentence that I imposed is a reasonable sentence based on the conduct of Ms. Jacobs, without regard to the niceties of whether or not she has to make a specific finding as to whether or not the two people were participants. Your Honor, if this case was remanded, the District Court certainly can do that and make a record of that. But there's recent case law in the circuit that states that in order for a sentence to be reasonable, the guidelines have to be followed accurately. And I don't recall the name right now. In the last few months, these cases have come down. And I don't think Mr. Milford was criminal. The record, assuming that he was. By the way, were they immunized for their testimony? No, I don't know. I don't know that personally. They both testified at the trial? Yes, they did. Okay. And neither one of them testified that they were doing so pursuant to a grant of immunity? Not to my recollection. Mr. Milford thought he was helping people by signing documents. He would get $100. And he didn't realize that he was doing anything wrong. And I'm not quite sure about Ms. Howard either. She was a secretary, and she just did her job. And I don't think that their conduct rises to a criminal participant anyway. And moving on to the abuse of position of trust in this case, the district court enhanced her offense level by two levels for abuse of a position of trust. And in this case, there's no trust relationship between Ms. Jacobs and the government. As an escrow officer, I can see that there was a trust relationship. Didn't she sign certifications in her capacity as the escrow officer that are required by HUD? Yes, she did. And her duty is between the seller and the buyer. And the government did state that the government did rely on her statements, but I don't believe that that would rise to a level of abuse of a position of trust. She's an escrow officer, and she's a licensed real estate broker, correct? Correct. So why can't we conclude from those two facts alone that where her position as the escrow officer and as the broker was critical to the closing of the real estate transaction, which HUD was being asked to ensure that that placed her in a fiduciary relationship with the government? You know, I believe by definition of an escrow officer, your duty is to the client and to the seller and not to anyone else. I mean, I think that's something that she should have done. But for a trust relationship like attorney-client, doctor-patient, I don't think that raises to the level of abuse. Well, then what's the purpose for the certification? I'm a little confused by your argument here. The argument is that in order for the abuse of a position of trust to apply, the trust relationship has to be between the defendant and the victim. The victim here was the federal government. Are you telling me that HUD wasn't trusting that the certification, if signed, was accurate? I believe that they relied on it. But for this enhancement to apply, it's a very special enhancement, that there's a trust relationship. A good case is the case. Well, let me ask you. I mean, maybe I'm getting hung up on the legal technicality here, and I'm just asking a practical question. If she's signing a certification that essentially says, you know, this transaction complies with all of the requirements and there's no hidden source of money or anything here, and you're telling me that HUD relied on that, then why doesn't her willful misrepresentation to HUD amount to an abuse of a position of trust? They're trusting the escrow officer who signs that statement to truly represent the facts. And she misrepresented the facts. There's a Ninth Circuit case I cite in my brief that helps explain my argument, USA v. Technic Services. In that case, the defendant was secretary treasurer of a company that won a bid to remove a vestos from a saw mill in Alaska, and they violated the Clean Water Act. And the district court in that case found a trust – he had a trust position and increased the sentence by two levels for abuse of position of trust. And the Ninth Circuit found no, because he was an employee of the government. He had no – he had – he didn't have that specialized relationship with the government. For that – for that position – Well, isn't an escrow officer in law supposed to be a – essentially a neutral person who sort of takes the money from the buyer and sees to it that it goes to the seller and otherwise makes sure that all of the documents are in the correct form and so on? Exactly, between the buyer and the seller. Right. Okay. But the question – but doesn't that establish, in essence, as far as the rest of the world is concerned, a position of trust? I don't believe it's the federal government. I truly believe between the seller and the buyer. See, a trust position is something very special. That's between attorney, client, doctor, and patient. Those type of relationships. I do concede she should – But as part of her obligation to the buyer, she is trying to get them an insured loan, correct? Yes. Right. And that loan is insured by HUD. Yes. Right. So if she misrepresents to the insurer the buyer's qualifications, then isn't she in essence harming the trust relationship that the buyer has? Because she is procuring the insurance under false pretenses and risking that the insurer may void the insurance when they find out that they were lied to. I don't think so, Your Honor, because she – they got the property. And when I look at the cases that have applied this trust, it was very specialized, very defined relationships. And I think that's my argument, that it doesn't go beyond the relationship that she was in as far as an escrow officer, and it didn't permeate out to the government. I'm saying she should – the certification should have been correct. I'm not arguing that. I'm just saying just as her particular – for this particular enhancement in this particular case, I don't believe it extends to the facts in this record. And regarding sophisticated means, the district court enhanced the sentence by two levels for sophisticated means. And that's – I only found three cases in this circuit that even discussed that enhancement. And that's enhancement that's applied when the conduct is especially complex or especially intricate. And – What do we do with the facts about her use of the trust account and the false gift letters? And she supplies the money, which then gets turned into a cashier's check, which – to make it look like the money is coming from a third source. You don't think as a matter of law that that's sufficient to show sophisticated means? No, because just as the probation officer was against this enhancement because the scheme was done in its simplest form. Those things – the straw man, the recycling of the funds, the appraisal – that had to be done in order to make the scheme work. It was done in its – Well, I mean, the fact that it was simple in its design and effective because it obviously hid from HUD where the money was actually coming from doesn't help us answer the legal question as to whether or not it was sophisticated, does it? Well, look at the two cases. The fact that it worked, it was a good scheme to defraud because it went on for a long time before she got caught doesn't mean it wasn't sophisticated. No, but the point is it was done in its simplest form to make the scheme work. It wasn't more intricate or more complex than another scheme of its nature. Well, what do we do with the affidavit from the HUD agent who says this is the most sophisticated scheme that I've ever investigated? No, I read that affidavit, and after I read that – And the district court relied on it, did it not? Yes, and after I read that, I did some research to see if I can find another case that was similar, and I did find a case which cited USA v. Godine, a Supreme Court case. Just the facts of that case, it was very similar where the defendant purchased housing, renovated, obtained an inflated appraisal, and sold it to a straw buyer, and then the property was repurchased. It was the same scheme. It was the same facts. And I couldn't find any other cases that showed a scheme that involved less conduct. But wouldn't we have to find that the district court's factual determination is clearly erroneous in order to reject her conclusion? Yes, Your Honor, that is the standard. Okay, and how can we do that when she's relying on the affidavit of the investigating case agent who says, in my experience as a HUD fraud investigator, this is the most sophisticated scheme I've seen? How can we declare that as clearly erroneous? To look at maybe the other two cases that were cited and that were published by the Ninth Circuit that discussed this issue or this enhancement. In Godine, did the Supreme Court say that's not a sophisticated scheme? No, no. But you just found a case that was similar to that. In response to the declaration, I looked at that. Well, I want to see for myself, and I searched. And that was the case that I found. But the scheme doesn't have to be unique in order to be sophisticated, does it? The fact that other people have done Ponzi schemes doesn't mean that the Ponzi scheme that's before this Court is a sophisticated scheme, does it? No, I think that the definition is, is it more complex than the normal FHA fraud scheme? I think that's where the threshold is. But we've got a declaration by a person who specializes in investigating HUD fraud cases that says this is the most sophisticated one that I've encountered. He personally did state that. Okay. And if you look at the case USA v. Ford, which was a tax evasion case, he had a company in Vancouver, Canada, and controlled companies in the United States to avoid paying taxes. And when he learned that the government was on to him, he went to Costa Rica, knowing that there was no extradition agreement between Canada and the United States for tax evasion. And that was considered something up and above the normal tax evasion case. And the one other case I found, USA v. Aragbi, where the defendant had a tax preparation business, and he had 141 mailboxes where he would receive defraudulent checks. And in order to cash them, then he would, he opened up a check-cashing business where then he, in his own business, he would cash his checks. And the Ninth Circuit found that that contact was up and above the average tax evasion case. You want to save some time for the rebuttal? Yes, Your Honor. Thank you. Thank you. Good morning. May it please the Court, I'm Assistant U.S. Attorney Greg Lesser for the United States. It seems like the big issues are the sentencing enhancements. With regard to the role adjustment, defendant failed to ask for any findings with regard to whether there was one other criminally responsible person to the scheme. And frankly, the district court and I, the probation officer, all just did not really focus on that because, well, frankly, it seemed settled that Ms. Howard, at least, had admitted say that for the otherwise extensive increase to occur, you have to find that there was at least one other, quote, participant, unquote. Now, I think the issue boils down to, do we send this case back to the district court to make that finding, or should we or can we, as an appellate court, look at the record and say, well, you know, we didn't hear him testify or anything, but we look at this in the record, and we can say there's enough here, and so it supports the finding. We'll make the finding. Somebody's got to make the finding. And it's the latter. The court can do it, Your Honor. And what's your authority for that? This court, Your Honor. It's fairly undisputed. I mean, in fact, I think that's why everybody missed it below, that there was at least one. Everybody knows what they did. Right. Nobody focused on it. We weren't focusing on, okay, let's find out the five participants and evaluate whether they were criminally responsible. I think it was understood. If you demand it back to the district court, the district court recites all of these facts, which everybody agrees upon, and then the district court says, and I find there's been no showing that there's another participant, and then I guess the government can appeal that sentence, I think. I suppose you can. And you come up to us and you say, that was clearly erroneous, wasn't it? And we might say, yeah, I don't know. Well, maybe that's your argument. Okay. Well, Your Honor, as I say, I think all of that would probably be unnecessary. I mean, let me just read you a little quote from the testimony of Cindy Howard. Okay. Saying that, I first started working there. I didn't realize how bad this was. And they made it seem, Nancy and her husband, they were just helping people out. It didn't seem like it was that bad. Towards the end, I realized it was really illegal, and it wasn't very nice to these people who were trying to get ahead in life. I mean, Cindy Howard testified. She participated in something she knew was illegal. So I think that, and then, Your Honor, Judge Tallman, you identified also Mr. Milford. Although, I have to say, I do agree somewhat with the defense that Milford was led to believe that he was doing something to help people out. But there's also the appraiser. And the appraiser was noted in the PSR and also mentioned by the district court when she kind of did not make any finding at all. And I did want to say that. She did not make a finding. There were no other criminally responsible participants. She just didn't make a finding either way and focused on the otherwise extensive problem. So the appraiser, VanderWeerd, he would give, according to the testimony of Cindy Howard, he would, the defendant would say, hey, I need you to appraise this property for this price. And he'd say, okay, sure, I'll do it. He wasn't always able to do it. But that was the testimony of Howard. It's also, as I say, mentioned in paragraph 14 of the PSR. And these things are also set forth in the defendant's brief at page 27 where she's laying out the facts of the case. And all three of those witnesses came in and testified without any consideration that they might be exposing themselves to criminal prosecution? The appraiser did not. Mr. Milford. The appraiser did not what? The appraiser did not testify. Did not testify. Of the three, the appraiser did not, Mr. Milford did, and Ms. Howard did. And nobody asked for immunity when you were investigating? No, we were not. They just freely talked to all the HUD agents. Yeah, sure, we kept two sets of files. They did not. If Jacobs wanted a different number, I'd finagle the appraisal for him. And, in fact, Judge Phillips did bring that up when I was inquiring with Ms. Howard. She asked, has this witness been given immunity? And I said, well, the statute of limitations has passed, which is the case. And it just never came up. She never asked for it or anything. So you've got those with regard to the role. So I think that the court can make the determination here that, look, there's evidence in the record that really can't be disputed, that there is at least one other criminally responsible participant. Does that satisfy your question, Judge Thompson? Oh, okay. Well, then I'll abuse the position. I'll let you know. I'll read it in the papers. Got anything else you want to say? Well, I've got 15 more minutes here. But don't feel like you have to use all of them. With regard to the abusive position of trust, the defendant keeps saying there has to be a trust relationship. And that's what's wrong with her argument. There does not have to be a trust relationship. That's not in the guideline. The guideline just says that the person is either in a position of public or private trust. And in this case, I mean, it's horribly ironic that the argument the defendant's making is that an escrow officer is not in a position of trust. The very purpose for an escrow officer is to be in a position of trust. Parties, bring me your money, bring me your deeds, bring me all your documents. But, I mean, I have to admit, that was my first reaction. But Ms. Booker does a pretty credible job of saying, yeah, but the trust relationship is as between the buyer and the seller, not the rest of the world. What's your response to her position? Okay, first of all, again, there doesn't have to be a relationship. It's a position, okay? So when someone is put in that position where, especially as an escrow officer, where you're saying, okay, rely on me, and you're telling this both to the public and to private parties who approach you, rely on me. Rely on me for what? Rely on me to be honest, rely on me to do whatever I'm asked to do with integrity and not perpetrate some sort of fraud scheme. By virtue of being an escrow officer, that's, I mean, the primary factor to look at with abuse of position of trust that's set forth both in Technic Services and in the Isaacson case is basically, does that position provide you the freedom to commit a difficult-to-detect wrong? And by saying to the world, I'm an escrow officer, trust me, and people do, yeah, it does put you in that position. Here's another factual thing, two factual things that may make a difference with regard to if the court views it as a relationship, as there must be an actual established relationship between the person, the defendant who's abusing trust and a party who approaches them. Two things. One is, HUD specifically provides these forms to the escrow officers. And on the forms, if you look at the excerpt of the record, it's 11, page 11 of the defendant's excerpt. I mean, there's a certification there over a warning from HUD saying, a false certification on this can get you into trouble and charged with 1001, which is exactly what happened here. So she's provided with HUD forms. Second of all, a party to the transaction was Norwest Mortgage. And Norwest Mortgage, working for Norwest Mortgage and actually testifying at trial, was a woman named Yolanda Espindola, who was certified as what's called a direct endorsement underwriter by HUD. HUD cedes some of its authority to prescreen loan applications coming in for FHA insurance to these direct endorsement underwriters. They take classes with HUD. They can be decertified if they're doing it improperly. So HUD actually has some presence in the actual party, the bank, that is a party to the transaction, Norwest Mortgage, handing over the money. Third thing, well, another thing factually, is if you look at the certification that the defendant made, the defendant's the escrow officer. She gets a form prepared. It has to be signed by the buyer and the seller and herself. Now, if you think about it, the seller has no relationship to the bank. There's no way that HUD could get something from the seller other than through the escrow officer. And because escrow officers hold themselves out to be the trusted party, as the testimony of the real estate expert, government's real estate expert at trial said, everyone trust me, that's what gave her the opportunity to perpetrate the scheme. So factually, there are relationships as well. Now, also the court mentioned. Are you arguing, it didn't occur to me when Ms. Booker was making the point, are you arguing then that there is, in fact, a trust relationship that does exist beyond the buyer and the seller? It includes the lender, the title insurance company, and in this case HUD, which is also insuring the loan itself from default. What I was giving you is facts to show that there actually are. There is an understood relationship, certainly in the industry. There's no actual contract between. I mean, no seller goes to HUD and says, okay, I'm going to sell my property, so I need to enter in a contract with you so that we're all trusting you. Well, it isn't the same. It isn't a direct attorney-client type of a relationship as an example. But it seems to me your argument is that the lender, the insurer, and I guess HUD is an insurer in this case, and the title company are all relying upon the escrow officer to perform escrow functions with integrity. And the borrower slash buyer and the seller. In addition to the borrower and the seller. So it's more than just the buyer and the seller. That's the response to Ms. Booker. That's correct. And, again, Your Honor, I would stay away from – I think the court has it correctly that everyone relies on the escrow officer as part of the – as an industry practice. And just as a completely well-known practice in this industry, everyone understands that the escrow officer is the one you can trust to honorably and correctly discharge all of the functions, make the representations that are necessary. And I think there was evidence of that at trial from Mr. Slayton. But, again, I would stay away from there being some sort of relationship. The defendant characterizes it as a fiduciary relationship. That's not what the guideline calls for. It just calls for being in a position from the perspective of the victim, not a relationship with the victim. With regard to the sophisticated means adjustment, well, actually, let me say one more thing about that, which is the borrowers also. The court kind of started to touch on this. The borrowers can be viewed as victims in this case. And the defendant was in a position – in fact, the court applied a vulnerable victim enhancement on the basis of the way the borrowers were victimized in this case, which was not challenged either in the district court or on appeal. Actually, it might have been in the district court, but not on appeal. But in this case, the borrowers are being given these mortgages that they cannot afford. They're being told that the home is being sold to them at a certain price, and their mortgage payments are going to be $700 a month. Then the bill comes, and it's $950 a month. Surprise, surprise. They go belly up. HUD eats it. But the defendant has already made her money on the scheme. So they were victimized in this case. And the district court did view it that way. So, of course, she's in a position of trust vis-à-vis those borrowers as well from the perspective of them as a victim. So moving on to the sophisticated means, it's a very fact-based inquiry. And so that's probably why you don't see a whole lot of circuit court cases on it. The guideline looks at the sophistication of it from the perspective of the ability to – particularly sophisticated such that it became difficult to detect, that it could continue for a long period of time. And in this case, you know, obviously the court's pointed out some factors that made it fairly sophisticated. And it's important to, you know, as far as the double-counting argument, a scheme can be sophisticated but not involve a position of trust. So the sophistication enhancement does get at a different harm. And then also a scheme can be very sophisticated but not widespread and not involving a lot of parties and a lot of properties and such like that. So also it's not duplicative of the role adjustment as far as the scheme being otherwise extensive. And likewise, a scheme can be extensive but not involve either abuse of trust or sophisticated means. Example would be just like a big, huge drug distribution ring. You know, that's not sophisticated. Some of them are, obviously, but some are just really simple but widespread. So the three enhancements are not duplicative of each other because they get at different harms. And there were facts to support them in this case, support each of them. It seems like the jury instructions aren't really at issue that much anymore, but to the extent they are, the government's argument is that the jury was properly instructed. The timing instruction was really superfluous. Even reading the defendant's case that she relies on to argue that timing is an important element, the Orrin case, if you look at that, in that case, the false statement was made by a seller of property to a third party. That third party then acted upon it and bought this property. Then the property was then resold to the Park Service, National Park Service. And both the Park Service and the intermediary party relied on the false statement that was made by the defendant. The defendant didn't know that he was making a false statement that was going to be passed on to the Park Service. But it was, and then he was prosecuted for it. And basically, the test for agency jurisdiction is very, very broad. It's simply, does it involve a matter as to which the agency has power to act? Because the false statement was made at a time that the Park Service could purchase property, which pretty much would be from its existence, that it was within the agency jurisdiction. It was ultimately passed on to them. So it's a very broad test. The timing instruction would just basically, on the facts of this case, where the statement was made directly on a HUD form that says, don't lie on this form or you'll be prosecuted to get HUD insurance, it's fairly clear that the timing is simply irrelevant and immaterial. And that argument was just superfluous and would be confusing to the jury, and the district court properly used her discretion to reject that jury instruction. So unless there's any other matters, I would submit at this point, unless the court has any questions. Thank you. I just have two points, one that I forgot to raise during the opening. Regarding the restitution order, the government stated in its brief that the defendant failed to object to it during her sentencing proceedings. And I spoke to Mr. Lesser prior to this argument that I was going to raise this. Reading the record, the defendant did object to the restitution amount, and the district court made expressed findings that she was responsible for the restitution amount as well as the guideline amount. So it's no longer a plain error review on that issue. And just going back just real quickly to the role in offense enhancement, I just want to read this one sentence from the excerpts of record, page 323. This is the district court. And the district court says, it appears that the government tacitly is conceding that although there were five persons helping the defendant and there only needs to be four, actually, because she can be the fifth, but the government seems to be saying that since they weren't doing so with the knowledge or mens rea to make them participants within the meaning of this section of the guidelines, that they are basing their argument for its application on the otherwise extensive clause, and the government said nothing. It was just left like that. If there's no further questions, I'll submit. Thank you very much.
judges: Pregerson, Thompson, Tallman.